UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHAN JACKSON                                    CIVIL ACTION

VERSUS                                                      NO. 22-927

MICHAEL GRAY, ET AL.                          SECTION "R" (5)


## <u>ORDER AND REASONS</u>

Before the Court are defendant Westchester Specialty Insurance Services, Inc.'s ("Westchester Specialty") motion for summary judgment,[1] plaintiff's motion to dismiss and substitute party,[2] and plaintiff's motion to continue the submission date of the motion for summary judgment.[3]  All motions are opposed.[4]  For the following reasons, the Court grants the motion for summary judgment, and denies both plaintiff's motion to dismiss and motion to continue the submission date.  Further, the Court construes plaintiff's request to substitute party as a motion to amend his complaint, and denies the motion for lack of good cause pursuant to Federal Rule of Civil Procedure 16(b).

---

[1]     R. Doc. 53.
[2]     R. Doc. 54.
[3]     R. Doc. 57.
[4]     R. Doc. 31.

## I.    BACKGROUND

This case arises from an automobile collision that occurred on April 6, 2021, at the intersection of Camp Street and Washington Avenue in New Orleans, Louisiana.  Plaintiff alleges that on that day he was traveling east along Camp Street when he came to a stop in order to make a right turn onto Washington Avenue.[5]  Defendant Michael Gray allegedly pulled alongside him in an attempt to also turn right onto Washington Avenue.[6]  According to plaintiff, he was unable to see Gray's vehicle.[7]  Plaintiff alleges that a collision resulted when both parties simultaneously attempted to execute the right turn.  The vehicle Gray was driving at the time of the collision was rented from Hertz Rental Corporation ("Hertz").[8]

After the incident, plaintiff filed this personal-injury lawsuit against defendants Gray, Hertz, ESIS Inc. ("ESIS"), Westchester Specialty, and XYZ Insurance Company.[9]  Plaintiff alleges that Westchester Specialty and ESIS breached their duties of good faith and fair dealing, as well as their affirmative duties to adjust claims fairly and promptly and to make a

---

[5]    R. Doc. 1 ¶ 12.
[6]    *Id.* ¶¶ 13-14.
[7]    *Id.* ¶ 15.
[8]    *Id.* at 6.
[9]    *Id.* ¶¶ 2-7.

2

reasonable effort to settle his claims, under Louisiana's Insurance Code, La. Stat. Ann. §§ 22:1892 and 22:1973,[10] and Louisiana Civil Code article 1997.[11]

ESIS filed a motion for summary judgment on the grounds that it is a third-party claims administrator, not an insurance company, and therefore was not liable to plaintiff based on the allegations made in his complaint.[12] On July 19, 2023, the Court granted the motion and dismissed plaintiff's claims against ESIS with prejudice.[13]  The Court specifically found that ESIS, as a third-party administrator, was not subject to the good-faith obligations under Louisiana Revised Statute sections 22:1892 and 22:1973, and that there was no evidence of a contract formed between plaintiff and ESIS to support plaintiff's article 1997 claim.[14]

Westchester Specialty now moves for summary judgment, likewise seeking to dismiss plaintiff's claims against it with prejudice.[15]  In its motion, Westchester Specialty argues that it is not an insurance company because it

---

[10]   Plaintiff's complaint refers to La. Stat. Ann. § 22:658 (now La. Stat. Ann. § 22:1892) and La. Stat. Ann. § 22:1220 (now La. Stat. Ann. § 22:1973).  In 2008, the Louisiana Legislature renumbered these statutes without making any substantive changes.  La. Acts No. 415, § 1 (effective Jan. 1, 2009).

[11]   R. Doc. 1 at 6-9.

[12]   R. Docs. 27 & 27-1.

[13]   R. Doc. 39.

[14]   *Id.*

[15]   R. Doc. 53.

does not write or issue insurance policies, and did not write or issue any insurance policy to Hertz, Gray, or any other party to this litigation.[16] Westchester Specialty contends that it functions as a producer agency and a surplus lines broker and, as such, cannot be liable to plaintiff for breach of the duty of good faith and fair dealing under Louisiana's Insurance Code, La. Stat. Ann. §§ 22:1892 and 22:1973.[17]  Westchester Specialty also contends that it did not contract with plaintiff, as required to sustain plaintiff's article 1997 claim.[18]

Shortly after Westchester Specialty filed its motion for summary judgment,[19] plaintiff filed a motion to dismiss Westchester Specialty without prejudice, and to substitute Westchester Fire Insurance Company ("Westchester Fire") as the correctly named defendant.[20]  In his motion, plaintiff contends that it was not until an "impromptu conference" on December 22, 2023—more than eight months after plaintiff instituted this lawsuit, and days before the discovery and dispositive motions deadline—

---

[16]  *Id.*; R. Doc. 53-4.

[17]  R. Doc. 53-4.

[18]  *Id.*

[19]  The time stamps on the motions indicate that Westchester Specialty filed its motion for summary judgment at 4:30 p.m. on December 26, 2023, and plaintiff filed his motion to dismiss and substitute eighteen minutes later, at 4:48 p.m., on that same day.  R. Docs. 53 & 54.

[20]  R. Doc. 54.

that he first learned that Westchester Specialty contested its identity as Hertz's insurer and that Westchester Fire "was incorrectly named as Westchester Specialty" in his complaint.[21]  Plaintiff asserts that Westchester Specialty's "delayed disclosure" has prevented him from conducting sufficient discovery into Westchester Specialty's assertion.[22]  Thus, plaintiff contends that Westchester Specialty should be dismissed without prejudice to avoid further prejudicing plaintiff should further discovery reveal information supporting a valid claim against Westchester Specialty.[23]

Alternatively, in opposition to Westchester Specialty's motion for summary judgment, plaintiff asserts that Westchester Specialty is liable because surplus lines brokers such as Westchester Specialty have a duty of good faith and fair dealing under sections 22:1892 and 22:1973, and because Westchester Specialty had a derivative agency contract with him, thereby establishing a cause of action under article 1997.[24]  Plaintiff also contends that regardless of Westchester Specialty's classification as an insurance company, it remains liable for breach of good faith and fair dealing because

---

[21]   R. Doc. 54-1 at 1 n.1; R. Doc. 61 at 2.
[22]   R. Doc. 61 at 2-5, 7-8.
[23]   *Id.*
[24]   *Id.* at 7.

of Westchester Specialty's purported "deceptive intentions" behind its delayed disclosure that it was incorrectly named as a defendant.[25]

The Court considers the motions below.

## II.   WESTCHESTER SPECIALTY'S MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  All reasonable inferences are drawn in favor of the nonmoving party, but

---

[25]      *Id.* at 6.

"unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### B.   Discussion

#### 1.   *Plaintiff's Request for Further Discovery*

Plaintiff argues that because of Westchester Specialty's delayed disclosure that it was incorrectly named in the lawsuit, he has been unable to

conduct adequate discovery to substantiate his claims against Westchester Specialty.[26]  Plaintiff contends that Westchester Specialty first alerted him that it was not the insurer only days before the discovery and dispositive motions deadline, which prevented plaintiff from inquiring about the newly disclosed details.  Plaintiff thus asserts that additional discovery is required to avoid further prejudicing plaintiff and to allow him to present a robust case against Westchester Specialty.[27]

While under Rule 56(b) a motion for summary judgment may be filed at any time, Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiff has failed to mention, let alone comply with, Rule 56(d).  He has not submitted an affidavit or declaration providing the information required by the Rule.  Specifically, plaintiff has not shown by affidavit or declaration what discovery he seeks or how this discovery would "influence the outcome of the pending summary judgment motion."  *See McKay v. Novartis Pharm. Corp.*,

---

[26]     *Id.* at 7-8.

[27]     *Id.*

751 F.3d 694, 700 (5th Cir. 2014) (holding that the nonmovant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion" (citation and internal quotation marks omitted)); *see also Dreyer v. Yelverton*, 291 F. App'x 571, 577-78 (5th Cir. 2008) (holding that Rule 56 "does not require that any discovery take place before summary judgment can be granted" when the discovery process will not produce evidence that creates a genuine issue of material fact (citation and internal quotation marks omitted)); *Washington*, 901 F.2d at 1286 (holding that, to obtain a continuance under Rule 56, the nonmovant must submit "an affidavit showing how the outstanding discovery could have assisted him in opposing the motion" (citations and internal quotation marks omitted)).   The Court therefore denies plaintiff's request for further discovery.

### 2.   *Plaintiff's Motion for a Two-Week Extension*

The Court likewise denies plaintiff's motion for a two-week extension to respond to the summary-judgment motion.[28]   The only ground asserted

---

[28]   R. Doc. 57.

was the holiday season, and, in any event, plaintiff timely responded to the merits of Westchester Specialty's motion.

### 3.   *Plaintiff's Louisiana Insurance Code Claims*

Louisiana Revised Statute sections 22:1892 and 22:1973 govern bad faith insurance claims under Louisiana law.  "The purpose of these penalty statutes is to 'provide remedies to insureds [or third-party claimants] whose insurance claims are improperly handled or to whom payment is unreasonably delayed.'"  *Bourg v. Safeway Ins. Co. of La.*, 300 So. 3d 881, 888-89 (La. App. 1 Cir. 2020) (quoting *Lee v. Sapp*, 234 So. 3d 112, 128 (La. App. 4 Cir. 2017)).  Under section 22:1892, a third-party claimant is entitled to penalties if, after satisfactory proof of loss, the insurer fails to pay a claim within thirty days and the failure is deemed "arbitrary, capricious, or without probable cause."  La. Stat. Ann. § 22:1892(B)(1)(a) (2023).  To establish a cause of action under section 22:1982, a claimant must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."  *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009).  Similarly, section 22:1973 imposes a duty of good faith and fair dealing on an insurer to "adjust claims fairly and promptly

and to make a reasonable effort to settle claims with the insured or the claimant, or both." La. Stat. Ann. § 22:1973(A) (2023). The statute subjects the insurer to damages and additional penalties if it fails to pay a claim within sixty days after satisfactory proof of loss, and the failure was arbitrary, capricious, or without probable cause. *Id.* § 22:1973(B)-(C).

To recover under sections 22:1892 and 22:1973, a claimant must "have a valid, underlying, substantive claim upon which insurance coverage is based." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 526 (5th Cir. 2010) (quoting *Clausen v. Fid. & Deposit Co. of Md.*, 660 So. 2d 83, 85 (La. App. 1 Cir. 1995) (internal quotation marks omitted)). Thus, these statutes are inapplicable if there is no insurance coverage. *See* La. Stat. Ann. §§ 22:1892, 22:1973; *see also In re Torch, Inc.*, No. 94-2300, 2000 WL 798457, at *4-5 (E.D. La. June 21, 2000) (holding same). Here, Westchester Specialty contends that it did not provide insurance coverage to any party to this litigation. Westchester Specialty submits the sworn declaration of Robin Wilson, Casualty Chief Underwriting Officer at Westchester Specialty,[29] who attests that Westchester Specialty does not write or issue insurance policies, and did not write or issue any insurance policies to Hertz or Gray that were

---

[29]      R. Doc. 53-1.

in effect on the date of the accident.[30]   Westchester Specialty also submits Hertz and Gray's responses to plaintiff's requests for admission, in which Hertz indicates that it was self-insured.[31]   Hertz's self-insured status is further supported by a certificate issued by the Louisiana Department of Public Safety and Corrections approving Hertz as a self-insurer.[32]

Plaintiff offers no evidence to rebut Westchester Specialty's claim that it is not subject to sections 22:1892 and 22:1973 because it did not issue insurance coverage.  By failing to set forth evidence showing a genuine issue of material fact, plaintiff's section 22:1892 and 22:1973 claims necessarily fail.  *See Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).  Nevertheless, plaintiff argues that Westchester Specialty is liable under these sections because the Louisiana Insurance Code defines an insurance producer to include a "surplus lines broker."[33]  *See* La. Stat. Ann. § 22:46(21).  But plaintiff does not demonstrate how the Code's definition of

---

[30]   *Id.*
[31]   R. Doc. 53-2 at 7.
[32]   R. Doc. 60-5.
[33]   R. Doc. 61 at 4-5.

13

an insurance producer relates to sections 22:1892 and 22:1973, as these sections provide for bad faith claims only against insurance companies, not producer agencies and surplus lines brokers. *See, e.g.*, *IFG Port Holdings, LLC v. Underwriters at Lloyds*, No. 19-CV-00835, 2021 WL 2604784, at *3 (W.D. La. June 24, 2021) (holding that sections 22:1892 and 22:1973 "only apply to 'insurers,'" and "[t]he general definition of 'insurer' in [section 22:46(10)] does not include an insurance broker"); *GeoVera Specialty Ins. Co. v. Joachin*, No. 18-7577, 2019 WL 3238557, at *7 (E.D. La. July 18, 2019) (holding that sections "22:1892 and 22:1973 only provide for bad faith claims against insurance companies," and not brokers); *Winbourne v. Wilshire Ins. Co.*, No. 18-1177, 2018 WL 6059536, at *2 (W.D. La. Nov. 2, 2018) (holding that sections "22:1892 and 22:1973 contemplate liability only against insurers," not insurance producers such as plaintiff); *Collins v. State Farm Ins. Co.*, No. 06-6649, 2007 WL 1296240, at *3 (E.D. La. Apr. 30, 2007) ("Sections 22:[1973] and 22:[1892] impose duties on insurers and do not mention insurance agents.").

Additionally, plaintiff contends that section 22:1973 applies to Westchester Specialty because that provision defines an insurer subject to bad-faith penalties to include a "surplus line insurer."[34]  *See* La. Stat. Ann.

---

[34]     R. Doc. 64 at 3.

§ 22:1973.   But the Louisiana Insurance Code differentiates between a "surplus lines insurer," which is "an approved unauthorized insurer or eligible unauthorized insurer," and a "surplus lines broker," which is a type of "producer" that "sell[s], solicit[s], or negotiate[s] insurance." *See* La. Stat. Ann. § 22:46(21) and (27).  And plaintiff offers no evidence that Westchester Specialty is a surplus lines insurer rather than a surplus lines broker.  Finally, plaintiff's argument that Westchester Specialty, regardless of whether it is an insurance company, has breached a duty of good faith and fair dealing under sections 22:1892 and 22:1973 likewise fails.  Plaintiff cites no authority or evidence that supports such an assertion.

Plaintiff has thus failed to meet his burden of demonstrating the existence of a genuine dispute of material fact, and Westchester Specialty is entitled to summary judgment dismissing plaintiff's claims under sections 22:1892 and 22:1973.

### 4.   *Plaintiff's Claim Under Louisiana Civil Code Article 1997*

Plaintiff's complaint alleges that Westchester Specialty breached its duty of good faith and fair dealing under article 1997 of the Louisiana Civil Code.   "Insurance contracts in Louisiana . . . are regulated by both the Louisiana Civil Code and Title 22 of the Louisiana Revised Statutes."

*Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 300 (5th Cir. 2009).  "The Civil Code provides the general law of contracts, and Title 22 fills in the specifics that are applicable to contracts of insurance." *Id.*

Article 1997 of the Louisiana Civil Code authorizes an obligee to bring a breach of contract claim for "damages, foreseeable or not, that are a direct consequence of [the obligor's] failure to perform."  La. Civ. Code Ann. art. 1997.  Thus, for article 1997 to apply, plaintiff must establish a breach of contract as defined by Louisiana Civil Code article 1994.  *See White v. State Farm Mut. Auto. Ins. Co.*, 479 F. App'x 556, 558 (5th Cir. 2012) (noting that article 1994 "imposes monetary liability for breaching a contract," and article 1997 "relate[s] to the measure of damages for the breach").  A fundamental element of a breach of contract claim is the existence of a contract.  *See Hercules Machinery Corp. v. McElwee Bros., Inc.,* No. 01-3651, 2002 WL 31015598, at *9 (E.D. La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages.").

Here, there is no evidence of a contract between Westchester Specialty and plaintiff, or Westchester Specialty and Hertz or Gray.[35]  Accordingly,

---

[35]   Plaintiff advances an argument, unsupported by applicable law, that he was a party to a derivative agency contract with Westchester Specialty. R. Doc. 61 at 7.  This theory is predicated upon the existence of a

plaintiff's article 1997 claim fails, and Westchester Specialty is entitled to summary judgment on this claim.

## III.   PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE

Shortly after Westchester Specialty filed its motion for summary judgment, plaintiff filed a motion to dismiss Westchester Specialty without prejudice.[36]  Westchester Specialty opposed the motion.[37]  Federal Rule of Civil Procedure 41(a)(2) governs opposed motions to dismiss without prejudice and provides for dismissal, by court order, "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2); *see also Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 298 (5th Cir. 2016) (recognizing that granting a Rule 41(a)(2) dismissal is discretionary).  Plaintiff alleges that dismissal without prejudice is warranted because post-dismissal discovery could yield evidence of Westchester Specialty's liability.[38]  Because Westchester Specialty has conclusively shown that it cannot be held liable, which plaintiff failed to rebut or demonstrate how further discovery could influence the

---

contract between Westchester Specialty and Hertz and, by extension, Gray.  *Id.*  Even if such a derivative agency theory had any purchase in the law, the absence of a contract between Westchester Specialty and any party to this suit necessarily dooms this claim as well.

[36]   R. Doc. 54.

[37]   R. Doc. 60.

[38]   *Id.*; R. Doc. 61 at 7-8.

outcome of the action against Westchester Specialty, the Court finds that a dismissal without prejudice would cause substantial prejudice to Westchester Specialty. *See Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007) (holding that dismissal without prejudice is proper "unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit" (citation and internal quotation marks omitted)); *see also id.* (noting that substantial prejudice results when the dismissal "effectively strips [the defendant] of a defense that would otherwise be available").  Moreover, because the Court granted Westchester Specialty summary judgment on all of plaintiff's claims, Westchester Specialty is entitled to have these claims dismissed with prejudice. *See Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (recognizing that summary judgment results in dismissal with prejudice).  Plaintiff's motion to dismiss without prejudice is therefore denied.

## IV.   WESTCHESTER FIRE

Plaintiff seeks to substitute Westchester Fire in this action.  Rule 25 of the Federal Rules of Civil Procedure governs motions to substitute, and it presents four limited circumstances in which substitution is proper: (1) death, (2) incompetency, (3) transfer of interest, and (4) separation from

public office. Fed. R. Civ. P. 25. None of these circumstances is present here. Accordingly, the motion to substitute is not a proper procedural vehicle to add Westchester Fire as a defendant. *See id.* Plaintiff's request is more appropriately addressed under Rule 15 of the Federal Rules of Civil Procedure, which allows for amendment of the complaint to "change the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(a)(2) and (c)(1)(C) (contemplating amendment by motion where the complaint improperly names the defendant at the outset). The Court thus construes plaintiff's substitution request as a motion to amend his complaint under Federal Rule of Civil Procedure 15.

Under Rule 15(a)(1), a plaintiff may amend the complaint once, as a matter of course, "within 21 days of serving it," or within 21 days of a responsive pleading or motion under Rule 12(b), (e), or (f). After that period, a party may "amend its pleading only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the Court should freely give leave to amend "when justice so requires" under Rule 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962), a party's ability to amend its pleadings may be limited by a court's scheduling order if it sets a deadline for amended pleadings. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). In such a case, an untimely attempt to amend the complaint requires

a showing of good cause to extend the deadline under Federal Rule of Civil Procedure 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (citation and internal quotation marks omitted). This inquiry focuses on the diligence of the party seeking to modify the scheduling order, and it is "squarely within [the district court's] sound discretion" to deny leave to amend under Rule 16(b)(4) if it finds that the plaintiff has not satisfied the first good cause factor by "account[ing] for its delay." *E.E.O.C. v. Serv. Temps*, 679 F.3d 323, 334 (5th Cir. 2012). Only after the Court finds that the good cause standard is satisfied under Rule 16(b) will the "more permissive" Rule 15(a) standard apply. *Butler v. Taser Intern., Inc.*, 535 F. App'x 371, 372 (5th Cir. 2013) (citing *S&W Enters.*, 315 F.3d at 536).

Here, the deadline in the Court's scheduling order for the parties to amend their pleadings was June 8, 2023,[39] more than six months before plaintiff filed his motion seeking to name Westchester Fire as a defendant.[40] Accordingly, the Court must first assess whether plaintiff has demonstrated

---

[39]    R. Doc. 30 at 1.
[40]    R. Doc. 54.

20

good cause for his untimely motion under Rule 16(b).   In making its determination of good cause, the Court considers four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *Sw. Bell Tel. Co*, 346 F.3d at 546.   Weighing these factors, the Court finds that plaintiff has not demonstrated good cause to modify the scheduling order.

First, plaintiff contends that his failure to timely move for amendment was caused by Westchester Specialty's delay in disclosing that it was incorrectly named.   Plaintiff contends that it was not until December 22, 2023, during an "impromptu conference" with Westchester Specialty, that he first learned that Westchester Fire was incorrectly named as Westchester Specialty in the suit.[41]  But Westchester Specialty was obligated to produce

---

[41]   *Id.* at 1 n.1.  The parties dispute the date on which plaintiff first learned that Westchester Specialty did not issue an insurance policy to any party.  Although plaintiff contends that this information was revealed on December 22, 2023, during an "impromptu conference" with Westchester Specialty, Westchester Specialty alleges that it first informed plaintiff of its position on October 23, 2023, which was subsequently reiterated in emails and during telephone calls throughout November and December.  R. Doc. 60 at 4; R. Doc. 60-4.  Nevertheless, both dates fall after the deadline for amendment of the pleadings, on June 8, 2023.

any actionable policy of insurance in its initial disclosures pursuant to Federal Rule of Civil Procedure 26 by June 8, 2023—the same date as plaintiff's deadline to amend his complaint.[42]  Fed. R. Civ. P. 26(a)(1)(iv) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action.").  Plaintiff did not receive through initial disclosures any insurance policy issued by Westchester Specialty under which it may be liable.  Plaintiff was thus on notice as of June 8, 2023, that there was potentially no Westchester Specialty policy.  And plaintiff has not shown any effort to conduct discovery between June 8, 2023, and December 22, 2023, into Westchester Specialty's status as an insurer, nor he has offered an explanation as to why he made no such inquiry until more than six months after the amendment deadline and mere days before the discovery deadline.

Second, plaintiff has not demonstrated the importance of the requested amendment.  Plaintiff has received multiple documents attesting to Hertz's self-insured status and denying that Westchester Fire issued any

---

[42]    R. Doc. 30.

insurance policies to either Hertz or Gray.[43]   This includes the sworn declaration of David Leehy, Senior Claims Representative at ESIS, who searched insurance records of Hertz and its affiliate entities, and discovered no liability insurance policy written or issued by Westchester Fire that was in effect on the date of the incident.[44]   Plaintiff has offered no evidence to the contrary.   Additionally, plaintiff himself submits a personal auto insurance policy between Gray and Wawanesa General Insurance Company, not with Westchester Fire.[45]   Thus, if Westchester Fire is not an insurer of any of the named parties for which liability may attach, the proposed amendment adding Westchester Fire would be of no import to the outcome of the case.

Third, the proposed amendment would unduly prejudice Westchester Fire.   Subjecting Westchester Fire to the burdens of litigation, despite evidence that it played no role in the alleged accident and issued no policy of insurance to either Hertz or Gray, would cause Westchester Fire great expense and needlessly extend the litigation.   *See Filgueira v. U.S. Bank Nat.*

---

[43]   *E.g.*, R. Doc. 60-2 (Leehy Declaration); R. Doc. 60-3 at 7 (Hertz and Gray's responses, denying that Westchester Fire insured the vehicle owned by Hertz that was involved in the accident); R. Doc. 60-5 (Hertz Self-Insurer Certificate); R. Doc. 60-4 at 1, 3-4, 6, 9 (Emails from Westchester Specialty's Counsel to Plaintiff's Counsel, stating that Westchester Fire is a separate entity that does write insurance policies but did not write any policy to Hertz or Gray).

[44]   R. Doc. 60-2.

[45]   R. Doc. 64-2.

*Ass'n*, 734 F.3d 420, 423-24 (5th Cir. 2013) (per curiam) (finding that amendment would cause undue prejudice because plaintiff attempted to "bring a host of meritless claims by way of amendment [that] would cause the [d]efendants great expense and extend the litigation needlessly"). Plaintiff's attempt to bring claims against Westchester Fire, nearly one month before jury trial is scheduled in this case and after the discovery deadline, would cause undue prejudice to Westchester Fire.  And, finally, a continuance would not avoid the inevitable prejudice to Westchester Fire should plaintiff be allowed to amend and assert meritless claims against Westchester Fire.

Accordingly, plaintiff has failed to show good cause to modify the scheduling order and permit amendment.  *See* Fed. R. Civ. P. 16(b)(4).

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant Westchester Specialty's motion for summary judgment, and DISMISSES the claims against Westchester Specialty WITH PREJUDICE.  The Court DENIES plaintiff's motion to dismiss and motion to continue the submission date,

and DENIES plaintiff's construed motion to amend the complaint to add

Westchester Fire as a defendant.


New Orleans, Louisiana, this ___26th___ day of January, 2024.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE